IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TECHNOLOGY FUNDING GROUP, LLC**
**(a Delaware limited liability company)**,

     Plaintiff,

     v.                                                       Civ. No. 11-843 BB/ACT

**COURTNEY R. CLAYBORNE, MICHAEL K.**
**SABERS, and CLAYBORNE, LOOS &**
**SABERS, LLP**
**(a South Dakota limited liability partnership),**
**and JOHN DOES 1-10,**

     Defendants.

### **MEMORANDUM OPINION**

**THIS MATTER** comes before the Court on Defendants' motion to dismiss for lack of personal jurisdiction and improper venue. Doc. 6. Having closely reviewed the parties' submissions and the relevant authorities, the Court will grant the Defendants' motion.

### Background

On September 21, 2011, Plaintiff Technology Funding Group, LLC ("TFG") filed a civil action against Courtney R. Clayborne, Michael K. Sabers, Clayborne, Loos, & Saber, LLP (the "Law Firm"), and John Does 1-10 (collectively "Defendants") alleging violations of the New Mexico Racketeering Act and the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). Doc. 2, ¶¶ 67-91. The Complaint further alleges conversion, unjust enrichment, and civil conspiracy. *Id.* at ¶¶ 92-110.

According to the Complaint, TFG is a limited liability company organized under the laws of Delaware. *Id.* at ¶ 1. It is deemed to be a citizen of New Mexico because all of its shareholders are New Mexico residents. *Id.* at ¶¶ 1, 3. In turn, Defendants Sabers and Clayborne

are residents of South Dakota.  Doc. 6, Ex. 1, ¶ 2; Doc. 6,  Ex. 2,  ¶ 2.  Similarly, the Law Firm is a limited liability partnership organized and existing under the laws of South Dakota.  Doc. 6, Ex. 1, ¶ 1.

The case arises out of TFG's purchase of Dakota Arms, Inc., a Minnesota corporation engaged in the business of manufacturing firearms.  Doc. 2, ¶ 13.  In 2006, Dakota Arms filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the District of Minnesota.  *Id.* at ¶ 14.  Pursuant to an asset purchase agreement approved by the Bankruptcy Court, TFG acquired Dakota Arms' assets, including the right to pursue an outstanding cause of action against First Western Bank of Sturgis ("FWB").  *Id.* at ¶¶ 16-19.

TFG then hired Sabers and the Law Firm to pursue the cause of action against FWB.  The case, *Technology Funding Group, LLC v. First Western Bank of Sturgis*, 5:07-cv-05084 (hereinafter the "lender-liability lawsuit"), was filed on November 12, 2007 in the United States District Court for the Western Division of the District of South Dakota.  *Id.* at ¶ 20.  According to the Complaint, Clayborne participated in meetings and a mediation session involving Sabers and TFG.  Doc. 2, at ¶ 21.

No facts in the lawsuit arose out of actions or conduct in New Mexico, all depositions were taken in South Dakota, and the parties ultimately resolved the lawsuit through mediation conducted in South Dakota before Retired Federal Magistrate Judge Marshall Young.  Doc. 6, Ex. 1, ¶¶ 16-18.  Sabers did, however, communicate with the members of TFG, including the President of the Company, Charles R. Kokesh – a resident of New Mexico.  Doc. 6, Ex. 1, ¶ 20; Doc. 2, ¶ 2.  During one conference call, Sabers allegedly urged Kokesh to accept a proposed settlement agreement with FWB.  Doc. 2, ¶ 26.  Sabers further offered to waive any performance or contingency fee due to the Law Firm if the case settled.  *Id.*  Subsequently, Kokesh allegedly sent Sabers an e-mail estimating the costs incurred during the litigation by the various law and accounting firms involved in the case.  *Id.* at ¶ 33.  The e-mail allegedly attributed $140,00 in

costs attributable to the Law Firm. *Id.* That same day, Sabers and Kokesh held another conference call and discussed the anticipated total due to the Law Firm. *Id.* at ¶ 34. However, despite these conversations, the Complaint alleges that Sanders fraudulently misrepresented to the Bankruptcy Trustee that $280,000 in fees were attributable to the Law Firm. *Id.* at ¶ 37. Sanders also allegedly sent Kokesh an e-mail advising him to ignore this calculation error. *Id.* at ¶ 40. Plaintiff thus alleges that Sanders misrepresented the amount due the Law Firm, thereby perpetrating a fraud on the Bankruptcy Court. *Id.* at ¶38.

Outside of Defendants' representation of TFG, Defendants have no contacts with New Mexico. Indeed, neither Sabers, Clayborne, nor the Law Firm have any contacts whatsoever with New Mexico. Doc. 6, Ex. 1, ¶¶ 2, 3, 8-9; Doc. 6, Ex. 2, ¶¶ 2-9.

Ultimately, TFG and FWB settled the lender-liability lawsuit for $1,700,000. *Id.* at ¶ 47. Once the settlement was approved by the Bankruptcy Court, $1,700,000 was wired to the Law Firm's trust account with specific terms for disbursement. *Id.* at ¶¶ 47-48. The Law Firm then paid itself a total of $147,318.40 out of the trust account. *Id.* at ¶ 53. The Law Firm also claimed a further $97,692.76 as "Fee and Tax Remaining Due as per Agreement." *Id.* at ¶ 56. These disbursements were confirmed in a Settlement Statement sent to Kokesh. *Id.* at ¶ 54.

Believing that the Defendants had unlawfully retained $100,000, TFG's attorneys sent Sabers and the Law Firm a demand letter. *Id.* at ¶ 63. The Law Firm replied in a letter, explaining that the fee taken by the Law Firm was a performance fee. *Id.* at ¶ 64. The Plaintiff then filed the instant lawsuit which was followed shortly thereafter by Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.

### Standard of Review

Plaintiff bears the burden of establishing personal jurisdiction, but where, as here, "the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th

Cir. 2011).  The Plaintiff can meet this burden by presenting facts that, if true, would reflect personal jurisdiction.  *See Melea Limited v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).  In assessing the sufficiency of the Plaintiff's submission, the Court must assume the truth of the allegations if they are "plausible, non-conclusory, and non-speculative."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  If factual disputes remain, they are resolved in favor of the Plaintiff.  *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006) (stating that on a motion to dismiss based on a lack of personal jurisdiction, factual disputes are resolved in favor of the plaintiff).

## Analysis

### I. Personal Jurisdiction

The principal issue in this case is whether section 1965 of RICO confers jurisdiction over the Defendants by authorizing nationwide service of process.  In relevant part, section 1965 provides:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
>
> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States . . . .
>
> (c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas [sic] issued by such court to compel the attendance of witnesses may be served in any other judicial district . . . .
>
> (d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965.  In *Cory*, 468 F.3d at 1229, the Tenth Circuit closely analyzed these four subsections.  The Court first explained that "subsection (a) sets venue in 'any district in which [a defendant] resides, is found, has an agent, or transacts his affairs,' 18 U.S.C. § 1965(a), thereby suggesting that an 'action can only be brought in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant.'" *Id.* at 1230 (quoting *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2d Cir. 1998)).  If jurisdiction is established as to one defendant, then subsection (b) authorizes nationwide service of process on "'other parties'" residing beyond the venued district if necessary to further the "'ends of justice.'" *Id.* (quoting 18 U.S.C. § 1965(b)).  Finally, the Tenth Circuit noted, subsection (d) does not provide nationwide service of process.  *Id.*  In support of this reading of section 1965, the Tenth Circuit cited RICO's legislative history and decisions from the Second, Seventh, and Ninth Circuits.[1]  *Id.* at 1230-31; *see also Multi-Media Int'l. LLC v. Promag Retail Servs. LLC*, 343 F.Supp. 2d 1024, 1030 (D. Kan. 2004).

      This Court is bound by the Tenth Circuit's interpretation of subsection 1965.  *See United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990).  Plaintiff must therefore establish personal jurisdiction over at least one Defendant in order to impose nationwide service under subsection (b) and establish jurisdiction over the remaining Defendants.  *Cory*, 468 F.3d at 1230; *see also Shell v. American Family Rights Ass'n*, 2010 WL 1348548, *11-12 (D. Colo. Mar. 31, 2010); *Bocciolone v. Solowsky*, 2007 WL 4557834, *3 (D. Colo. Dec. 20, 2007).

      Nonetheless, Plaintiff urges this Court to disregard *Cory* on the grounds that the Tenth Circuit incorrectly interpreted section 1965.  Plaintiff argues that the Tenth Circuit overlooked two key arguments that are applicable in the instant case: (1) the role of Fed. R. Civ. P.

---

[1] *See PT United Can Corp.*, 138 F.3d at 71-72 (2d Cir. 1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Butchers Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).  The District of Columbia Circuit has also adopted this position.  *See FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008).

4(k)(1)(C) and (2) the analysis provided in *Noble Securities, Inc. v. Miz Engineering, Ltd.*, 611 F.Supp.2d 513, 547-48 (E.D. Va. 2009), for establishing jurisdiction under section 1965(d). Plaintiff's argument tracks the analysis provided in *Noble Securities, Inc.* and proceeds as follows: First, Fed. R. Civ. P. 4(k)(1)(C) allows for personal jurisdiction to be conferred where a federal statute authorizes service of process on out-of-state defendants; second, section 1965(d) provides for nationwide service of process in "any action or proceeding;" therefore, Plaintiff urges this Court to conclude that personal jurisdiction is appropriate in this Court for the simple reason that service has been accomplished under RICO. Doc. 12, pp. 2-3.

Plaintiff's invitation to follow *Noble Securities, Inc.* runs contrary to the Tenth Circuit's decision in *Cory*. To begin with, the Tenth Circuit in *Cory* recognized the role of Fed. R. Civ. P. 4(k)(1)(C) in providing personal jurisdiction under RICO's nationwide service of process provision. The *Cory* Court clearly identified the issue in the case as "whether RICO's service of process provision, § 1965, potentially confers jurisdiction by authorizing service of process." *Cory*, 468 F.3d at 1229.[2] After analyzing the statute, however, the Court concluded that summonses can be served nationwide pursuant to section 1965(b) of RICO only if (1) a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant and (2) nationwide service is required by the ends of justice. *Id.* The Tenth Circuit further clarified that subsection (d) does *not* authorize nationwide service of process.To be clear, the court explained, subsection (d)'s reference to "'[a]ll other process' " must mean process different than a summons or a government subpoena, both of which are dealt with in previous subsections." *Cory*, 468 F.3d at 1230 (18 U.S.C. § 1965(d)). Accordingly, the Tenth

---

[2] The Tenth Circuit also cited *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2010), for the proposition that where Congress authorizes nationwide service, personal jurisdiction may be established, so long as it comports with Fifth Amendment due process. *Cory*, 468 F.3d at 1229. The Tenth Circuit thus realized the potential implications of subsection 1965 on personal jurisdiction.

Circuit also dismissed the notion, adopted by both the Fourth Circuit in *EASB Group, Inc.*, 126 F.3d at 626-27, and the Eleventh Circuit in *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997), that section 1965(d) authorizes nationwide service of process, and therefore the exercise of jurisdiction in any district court of the United States. For the same reasons then, this Court therefore firmly declines Plaintiff's invitation to follow *Noble Securities, Inc.* – a decision that would require this Court to align itself with *EASB Group Inc.* and *Republic of Panama*, two decisions the Tenth Circuit declined to follow in *Cory*.

Instead, to determine whether nationwide jurisdiction is appropriate under RICO, the Court must engage in a three-step analysis to determine: (1) whether personal jurisdiction can be established over one defendant; (2) whether the ends of justice require nationwide service; and (3) whether the exercise of jurisdiction comports with due process. *Cory*, 468 F.3d at 1229–31. The dispositive issue in the instant case is whether Plaintiff has satisfied its burden of establishing personal jurisdiction over at least one Defendant based on New-Mexico's long arm statute, § 38-1-16(A), NMSA 1978.

For a court to exercise personal jurisdiction over a defendant, there must be both a showing that (i) jurisdiction is proper under the laws of the forum state and (ii) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Under New Mexico law, in order for a court to exercise personal jurisdiction over a nonresident, out-of-state defendant, the following three-part test must be satisfied: (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act. *State Farm Mut. Ins. Co. v. Conyers*, 784 P.2d 986, 987 (N.M. 1989). The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts." *Kathrein v. Parkview Meadows, Inc.*, 691 P.2d 462, 463 (N.M. 1984). Similarly, New Mexico's long-arm

statute is co-extensive with the constitutional limitations imposed by the due process clause. *Zavala v. El Paso County Hosp. Dist.*, 172 P.3d 173, 178 (N.M. App. 2007). Therefore, the analysis collapses into a single inquiry: whether the defendant "had the requisite minimum contacts with New Mexico to satisfy due process." *Id.*

The minimum contacts requirement may be satisfied by either general or specific jurisdiction. *Id.* at 179.[3] To begin with, Plaintiff has failed to establish general jurisdiction over any of the Defendants in the instant case. "If a defendant has continuous and systematic contacts with [New Mexico] such that the defendant could reasonably foresee being haled into court in that state for any matter, New Mexico has general personal jurisdiction and the plaintiff need not demonstrate a connection between the defendant's contacts and the cause of action." *Id.* (quotations omitted). Here, there are no facts establishing continuous and systematic contacts between Sanders, Clayborne, or the Law Firm, and New Mexico. To the contrary, it is undisputed that neither Sanders, nor Clayborne, nor the Law Firm own any property in New Mexico, advertise legal services in New Mexico, maintain any offices in New Mexico, are listed in any New Mexico phone book, or have contracted with any party in New Mexico. Doc. 6, Ex. 1, ¶¶ 4-8; Doc. 6, Ex. 2, ¶¶ 2-9. Plaintiff has thus failed to satisfy the "more stringent minimum contacts test" for general jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004).

Similarly, Plaintiff has failed to identify a basis for specific jurisdiction over any Defendant. For specific jurisdiction, "the Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed'

---

[3] Both general and specific jurisdiction also require a showing that exercise of jurisdiction would not "offend traditional notions of fair play and substantial justice." *Zavala*, 172 P.3d at 179. The Court, however, need not undertake an analysis of "fair play and substantial justice" because the Plaintiff has failed to establish the requisite minimum contacts as explained *infra*.

its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov*, *supra*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *F.D.I.C. v. Hiatt*, 872 P.2d 879, 882 (N.M. 1994) (explaining that the purposeful availment test of *Hanson v. Denkla*, 357 U.S. 235, 253 (1958), is the focus of a minimum-contacts analysis). In the instant case, the only contact Defendants had with New Mexico was incidental to the lender-liability lawsuit in South Dakota. During the course of that proceeding, Sanders sent court filings and other relevant documents to Kokesh, the President of TFG who lived in New Mexico. Doc. 1, Ex. 1, ¶ 22. Sanders also telephoned and e-mailed Kokesh. *Id.* at ¶ 23.

These types of contacts have been deemed insufficient to satisfy the "purposeful availment" prong of a minimum-contacts analysis. For example, in *DeVenzeio v. Rucker, Clarkson & McCashin*, 918 P.2d 723 (N.M. App. 1996), the New Mexico Court of Appeals addressed the issue of whether there is "personal jurisdiction over out-of-state attorneys who were retained by New Mexico residents . . . to conduct litigation pending in [California]." *Id.* at 724. The plaintiffs in *DeVenzeio* maintained that there was jurisdiction because the California attorney "perpetrated the intentional torts of fraud, deceit, and misrepresentation in his communications through the letters and telephone calls." *Id.* at 725. The court rejected this contention, explaining that, because the attorney's "primary service . . . was to provide legal services on their behalf[,] ... [the] letters and telephone calls to the [plaintiffs] in New Mexico were ancillary to this primary function." *Id.* at 727.

Here, the Defendants' primary service was to represent TFG, a Delaware LLC, in the lender-liability lawsuit in South Dakota. To begin with, Defendants did nothing in New Mexico to solicit Plaintiff's business. Rather, TFG contacted the Defendants and requested their representation in the lender-liability lawsuit in South Dakota. While the Defendants did have subsequent contacts with Kokesh, a New Mexico resident, those contacts were ancillary to the

9

Defendants' representation of TFG in the South Dakota litigation;[4] thus, they did not represent an effort by the Defendants to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State."  *Hanson*, *supra*, 357 U.S. at 253; *DeVenzeio*, 918 P.2d at 725; *Robinson-Vargo v. Funyak*, 945 P.2d 1040, 1043-44 (N.M. App. 1997); *accord Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)(holding that a Florida law firm's contacts with California while representing a Californian in a Florida proceeding, including accepting payments from a California bank account, and making phone calls and sending letters to California, "do not establish purposeful availment; this is not the deliberate creation of a 'substantial connection' with California" (quoting *Burger King Corp.*, *supra*, 471 U.S. at 475)).  Moreover, even assuming the Plaintiff suffered an economic loss in New Mexico, such a loss alone is not sufficient for personal jurisdiction based on intentional tortious acts of fraudulent misrepresentation when the non-resident defendant "did not avail himself of the privilege of conducting activities in New Mexico."  *DeVenzeio*, 918 P.2d at 727; *Tarango v. Pastrana*, 616 P.2d 440, 442-43 (N.M. App. 1980).  The Court finds, therefore, the individual contacts of Defendants to New Mexico are insufficient to bring them within New Mexico's long-arm statute.  Because Plaintiff has failed to establish jurisdiction over at least one defendant, Plaintiff cannot rely on RICO's nationwide service of process provision to establish jurisdiction over any of the remaining defendants.

---

[4] In the Complaint, Plaintiff emphasizes the fact that the settlement agreement was addressed to "Charles Kokesh," not TFG.  Doc. 2 at ¶ 55.  Kokesh was, however, the President of TFG.  Thus, the mere fact that the letter was addressed to Kokesh does not lead to the conclusion that Sanders, Clayborne, or the Law Firm purposefully availed itself of the privilege of conducting activity in New Mexico.

## II. Venue

Since there is no personal jurisdiction over Defendants, the Court will not consider whether venue is proper in New Mexico. Instead, the Court will dismiss, without prejudice,[5] all claims against the Defendants for lack of personal jurisdiction.

_____
BRUCE D. BLACK
UNITED STATES DISTRICT JUDGE

---

[5] Defendants request that the Court dismiss Plaintiff's complaint with prejudice. The Tenth Circuit, however, has stated that "dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is incapable of reaching a disposition on the merits of the underlying claims." *Brereton v. Bountiful City* Corp., 434 F.3d 1213, 1218 (10th Cir. 2006). Pursuant to *Brereton* then, the Court will dismiss the Complaint without prejudice.